UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20135-RUIZ

UNITED STATES OF AMERICA

v.

**VANGELIS RICARDO DOS ANJOS GOMES,**

**Defendant.**
_____/

## UNITED STATES' MOTION *IN LIMINE*

In advance of the October 20, 2025, trial against Vangelis Ricardo Dos Anjos Gomes (the "Defendant"), the United States of America seeks *in limine* rulings from the Court that:

(1) The Defendant is precluded from arguing or introducing evidence related to a justification or necessity defense, unless and until the Defendant provides sufficient evidence supporting its availability;

(2) The United States may admit limited testimony that the Defendant had been a detainee at Krome Service Processing Center ("Krome"), a federal immigration detention center, since October 29, 2024, which is inextricably intertwined and relevant to show that the Defendant was detained pursuant to lawful authority of the Attorney General; that the Defendant knew the victims were federal officers performing their official duties; and that the Defendant knew detention officers would give commands and instructions that detainees were required to follow;

(3) The Defendant is precluded from arguing or introducing evidence regarding the conditions of detention at Krome, or any allegation of excessive force against the Defendant or another detainee, apart from the altercation charged in the instant offense;

(4) The Court should limit allow only limited references and testimony concerning the Defendant's physical condition resulting from the instant offense;

(5) The Defendant is precluded from presenting hearsay testimony from defense witnesses who were not present for the offense;

(6) The Defendant is precluded from arguing or introducing any evidence related to jury nullification.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Defendant is a Brazilian citizen with no lawful status in the United States. The Defendant entered the United States with a tourist visa on or about December 7, 2021, with authorization to remain in the country for a period not to exceed June 6, 2022.

In or around October 2024, ICE Enforcement and Removal Operations (ERO) Miami confirmed with the Assistant Attaché of Removals for Brazil, that the Defendant had an active arrest warrant for sexual assault of a minor in Brazil, related to a September 21, 2020, incident. Interpol issued a Red Notice regarding the Defendant.

On October 29, 2024, ERO Miami arrested the Defendant in South Florida, as the target of a pre-planned enforcement operation. He was taken to Krome, and on October 30, 2024, ERO Miami issued a Notice to Appear, Form I-862, charging the Defendant with removability pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act.[1]

On or about January 24, 2025, at 11:56 a.m. the Defendant was involved in a verbal altercation with another detainee from his assigned dormitory while they were walking to lunch. They were being escorted by detention officers who then intervened.[2]

Detention Officers A.M. and L.B. were performing their official duties when they gave the Defendant verbal commands to leave the area where the altercation had occurred, but the Defendant ignored all these commands. The Defendant reportedly said that he wanted to talk to a supervisor. The Defendant continued to ignore verbal commands from multiple staff members to

---

[1] In that after admission as a nonimmigrant under Section 101(a)(15) of the Act, you have remained in the United States for a time longer than permitted.
[2] Detention officers with Akima Infrastructure Protection (AIP) work at Krome under the direction of United States Immigration and Customs Enforcement (ICE) and are federal officers/employees. Their official duties include patrolling detention facilities and ensuring detainees comply with facility rules.

leave the area. He was then ordered to submit to hand restraints, but he refused.

Officer A.M. again directed the Defendant to submit to hand restraints, at which point the Defendant became physically combative by pulling away from staff and moving his arms to prevent being secured in the restraints. While he was being given commands to comply, the Defendant bit Officer L.B. twice on the arm. Officers A.M. and L.B. attempted to physically restrain the Defendant and eventually took him to the ground.

While on the ground, the Defendant continued to resist by attempting to kick and strike staff with closed fists. The Defendant then bit Officer A.M. on the leg, through the pants, breaking A.M.'s skin. Other staff arrived and eventually the Defendant was secured and escorted to another area for processing. In addition to surveillance video of the incident, there were multiple witnesses, including AIP officers and lieutenants.

The Defendant was assessed by medical staff and medically cleared. The Defendant had scratches on his inner right eye, forehead, and upper right eyelid. The medical staff noted that no follow-up was required for the Defendant. Detention Officers A.M. and L.B. both reported injuries, and they went to urgent care for medical treatment after the altercation.

The Defendant was detained at Krome until on or about April 23, 2025, when he was transferred to FDC Miami in relation to the instant case.

## LEGAL STANDARDS

Federal Rules of Evidence 401, 402, and 403 generally govern admission of relevant evidence. Relevant evidence is presumptively admissible. FED. R. EVID. 402. Evidence that is not relevant is inadmissible. *Id.* Evidence is relevant if it makes a fact more probable than it would be without the evidence. FED. R. EVID. 401. Nevertheless, a court may exclude relevant evidence if its probative value is "substantially outweighed" by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." FED. R. EVID. 403.

## ARGUMENT

I. <u>The Defendant is Precluded from Arguing or Introducing Evidence Related to a Justification or Necessity Defense, Unless and Until the Defendant Provides Sufficient Evidence Supporting its Availability.</u>

The Defendant has indicated that he may present a "justification" or "necessity" defense at trial. The Defendant has not yet shown that he is entitled to the defense and so he should not be allowed to advance this argument in openings, raise it in jury selection, or try to elicit other evidence about it during cross examination of witnesses, unless and until he provides a sufficient proffer that satisfies the Court that he could meet the elements of this affirmative defense.

The bar for a justification defense is high, especially in the detention facility and prison context. They are unique places in society, "where physical contact between officers and inmates, (sometimes rough) is common and necessary," *United States v. Jones*, 254 F. App'x 711, 722 (10th Cir. 2007), and where "[o]bviously correctional officers will sometimes need to use force to maintain order," *United States v. Waldman*, 835 F.3d 751, 754 (7th Cir. 2016). That's why the Supreme Court has long recognized that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges or rights, a retraction justified by the considerations of our penal system," *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).

Justification is an affirmative defense, which the Defendant must prove by a preponderance of the evidence. *United States v. Deleveaux*, 205 F.3d 1292, 1299 (11th Cir. 2000). *See* 11th Cir. Pattern Jury Instructions, S16. The elements for this affirmative defense are:

1. That there was an **unlawful** and present, immediate, and impending threat of death or serious bodily harm to the Defendant or another;

2. That the Defendant's own negligent or reckless conduct did not create a situation where the Defendant would be forced to engage in a crime;

3. That the Defendant had no reasonable legal alternative to violating the law; and

4

    4.   That avoiding the threatened harm caused the criminal action.

*Id*. (emphasis added).

"A defendant charged under 18 U.S.C. § 111 may assert, as an affirmative defense, a theory of self-defense, 'which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in <u>immediate danger of unlawful bodily harm</u> from his adversary and that the use of such force <u>is necessary to avoid this danger</u>.'" *See United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982) (emphasis added), cited by *United States v. Suddith*, 635 F. App'x 678, 681 (11th Cir. 2015).

In order to have the justification defense of necessity submitted to a jury, "a defendant must first produce or proffer evidence sufficient to prove the essential elements of the defense." *United States v. Montgomery*, 772 F.2d 733, 736 (11th Cir. 1985) (citing *United States v. Bailey*, 444 U.S. 394, 412 n. 9 (1980)).

This Court should require the Defendant to proffer at a pre-trial hearing the evidentiary basis to meet each element of the "justification" defense prior to allowing the Defendant to advance argument or introduce evidence of such defense at trial. *See, e.g.*, *United States v. Rice*, 214 F.3d 1295, 1299 (11th Cir. 2000) (affirming conviction where district court excluded any evidence of the purported justification defense after finding defendant's proffer was insufficient to meet the elements of such a defense); *United States v. Harmon*, 213 F. App'x 914, 915–16 (11th Cir. 2007) (affirming pretrial order excluding, as a matter of law, evidence of justification because the defendant had not met his burden to show by a preponderance that he was entitled to the defense).

With the benefit of the proffered evidence *before* trial, the Court will be able to make a reasoned determination as to whether the Defendant would be able to satisfy the elements of the defense at trial. Often, with the benefit of the proffered evidence, district courts have determined—

and the Eleventh Circuit has affirmed—that the defendant cannot make this defense, and it is excluded accordingly. *See, e.g.*, *Rice*, 214 F.3d at 1299; *Harmon*, 213 F. App'x at 915–16.

Here, as of writing, the Defendant has not produced any discovery or evidence to the United States of a justification defense—despite multiple demands for reciprocal discovery being made. Accordingly, the United States is unaware of evidence supporting the proposition that the Defendant's assault of the detention officers occurred because he was faced with an unlawful, immediate, and impending threat of death or serious bodily injury, that the Defendant's own conduct did not create the situation where the Defendant would be forced to engage in a crime, that the Defendant had no reasonable legal alternative to violating the law, and that avoiding the threatened harm caused the criminal action. 11th Cir. Pattern Jury Instructions, S16; *see also Rice*, 214 F.3d at 1298–99.

It is unlikely that the Defendant will be able to proffer sufficient evidence to meet the elements of a justification defense. Based on its review of the evidence, the Government believes the Defendant would need to testify in order to attempt to meet the elements of a justification defense. Even if he testifies, the testimony of various eyewitnesses and the video recording of the altercation do not support that the Defendant would be able to satisfy the elements of the justification defense.

Legally insufficient defenses are inadmissible and should be excluded because they are irrelevant as a matter of law to the charges in the indictment. *See* Fed. R. Evid. 402; *Bailey*, 444 U.S. at 416; *Anderson*, 872 F.2d at 1516 n.12. For these reasons, the Court should require the Defendant to proffer the evidentiary basis to meet each element of a justification defense at a pre-trial hearing. A pre-trial ruling permits the Court to streamline trial and conserve judicial resources and permits the parties to tailor their theories of the case before opening statements.

Unless and until the Defendant establishes that he has evidence to meet each element of the justification defense, the defense is not available, and the United States asks this Court to exclude any testimony or argument related to this defense during any part of the trial, including during *voir dire*.

II.   The Court Should Admit Limited Testimony About Krome and the Defendant's Detainee Status which is Relevant to Proving Elements of the Crime.

The fact that the Defendant was a noncitizen in immigration proceedings and therefore had been lawfully detained at Krome, in accordance with the authority under the Immigration and Nationality Act, is relevant and inextricably intertwined with the charged offense. The Eleventh Circuit has long "held that evidence that pertains to 'the chain of events explaining the context, motive and set-up of the crime' is admissible if it is 'linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.'" *United States v. Wideman*, 749 F. App'x 788, 791 (11th Cir. 2018) (quoting *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)); *see also United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) ("evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses to which the defendant was indicted'").

Indeed, the jury should be provided context that the Defendant was detained at Krome pursuant to lawful authority, pending his immigration proceedings. It gives context as to his status as a federal detainee, which is why he is required to comply with the instructions and commands of detention officers in those facilities. Given recent media regarding people allegedly being unlawfully detained by U.S. Immigration and Customs Enforcement, it is patently unfair to require the Government to begin the case, *in media res*, when the actual chain of events is relevant as

7

inextricably intertwined and, importantly, forecloses improper inferences and suppositions.

In addition to proving that the Defendant forcibly assaulted and caused bodily injury to the victims, the Government also needs to prove beyond a reasonable doubt that the Defendant assaulted the victim. "while [the victim] is engaged in or on account of the performance of official duties," *See* Eleventh Circuit Pattern Jury Instructions O1.2. To that effect, the Government must be able to introduce testimony of the victims' official duties at Krome.

The fact that the Defendant was being lawfully detained pending his immigration proceedings, had been detained at Krome since October 29, 2024, and was required to comply with the commands of detention officers, is direct evidence needed to prove an element of the offenses with which the Defendant is charged in this case. The fact that the Defendant had been detained for nearly three months prior to the incident, is also evidence of his knowledge of the victims' status as federal officers.[3]

This evidence is intrinsic and relevant because the Defendant's period of detention is necessary to defeat a possible claim that the Defendant believed the victims were private citizens. *Young*, 464 F.2d 160; *Danehy*, 680 F.2d 1311. One question in the jurors' minds on this front will necessarily be how long he had been at Krome: if the Defendant had just arrived at Krome, particularly considering that he speaks Portuguese as his primary language, the jurors may find it credible that he did not know the victims were federal officers or did not understand his situation. Yet the Defendant had in fact been detained at Krome for several months before the January 2025

---

[3] While the Government must prove beyond a reasonable doubt that the victim was a federal officer performing an official duty, whether the Defendant knew at the time that the victim was a federal officer carrying out an official duty does not matter. *See* Eleventh Circuit Pattern Jury Instructions O1.2. But, a Defendant may not be found guilty if the Defendant acts from the mistaken belief that he or she is threatened with an intentional tort by a private citizen. *United States v. Young*, 464 F.2d 160 (5th Cir. 1972); *United States v. Danehy*, 680 F.2d 1311 (11th Cir. 1982).

incident, which tends to prove that he knew uniformed detention officers were giving commands and instructions that he had to obey. In this way, the Defendant's detention at Krome for three months tends to prove that he knew the victims were detention officers and that he was required to obey detention officers' directives, all of which is "necessary to complete the story of the crime for the jury." *Edouard*, 485 F.3d at 1344 (quotations omitted).

III.  The Court Should Preclude Testimony or References to the Conditions at Krome or Any Allegations of Excessive Force Occurring at Krome Apart from the Altercation Charged.

The conditions of the Defendant's confinement are irrelevant to whether the Defendant assaulted the victims. The Defendant may try to bring such claims in a civil action against the Department of Homeland Security, but his conditions of confinement do not present a legal defense to the offense of assault on a federal officer.

Similarly, the Defendant should not be allowed to introduce argument or evidence that besides the altercation charged in the instant offense, an allegation of excessive force occurred at Krome toward the Defendant or any other detainee. Such allegation would be irrelevant to the offense charged and have no bearing on the elements of the instant offense, or any affirmative defense.[4]

IV.  The Court Should Limit Allow Only Limited References and Testimony Concerning the Defendant's Physical Condition Resulting from the Instant Offense.

The Court should allow only limited evidence and testimony about the Defendant's physical condition resulting from the instant offense. Medical records show that the Defendant had scratches on his inner right eye, forehead, and upper right eyelid. The medical staff noted that no

---

[4] Again, as of writing, the Defendant has not produced any discovery or evidence to the United States despite multiple demands for reciprocal discovery being made.

9

follow-up was required for the Defendant, and he was given Tylenol and an ice pack. Photographs were taken of the Defendant's physical condition.

Days after the offense, the Defendant attempted to complain of other injuries that he argued he sustained during the January 24, 2025, incident. None of this is relevant to the instant offense. Reference to those complaints would be self-serving hearsay and irrelevant.

Evidence must be relevant to a defendant's guilt to be admissible. The only evidence admissible at trial is evidence that has a "tendency to make a fact more or less probable" and "the fact is of consequence in determining the action" (*e.g.*, by relating to one of the elements). Fed. R. Evid. 401.

Here, evidence of the Defendant's purported injuries that he reported after January 24, 2025, does not go to the elements of the crime of forcibly assaulting a federal officer, which are just (1) the Defendant forcibly assaulted the person described in the indictment; (2) the person assaulted was a federal officer performing an official duty; and (3) the Defendant inflicted bodily injury. *See* Eleventh Circuit Pattern Jury Instructions O1.2. The Defendant sustained scratches while he was physically assaulting two detention officers and walked to the medical unit where he was medically cleared. Any subsequently disclosed purported injuries are not relevant to either the Defendant's state of mind prior to his assault or any elements of the charged offenses, and they do not support a self-defense theory.

V. <u>The Court Should Exclude Self-Serving Hearsay and Exclude Witnesses Who Can Only Testify to Hearsay.</u>

The Defendant should not be allowed to introduce any of his own out-of-court statements through cross-examination of Government witnesses or through presentation of defense witnesses. The Government, as the party opponent, may introduce the Defendant's prior statements as non-hearsay statements of a party opponent (or to impeach the Defendant should he choose to testify).

10

FED. R. EVID. 802(c)(2)(A); FED. R. EVID. 608(b). However, the Defendant may not introduce his own statements independently—or even the remainder of a statement—unless the remainder gives the jury a "complete understanding of the 'total tenor and effect of the utterance.'" *United States v. Santos*, 947 F.3d 711, 729 (11th Cir. 2020) (citing *Beech Aircraft Crop. v. Rainey*, 488 U.S. 153 (1988)); *see also United States v. Sharp*, 2021 WL 1736882, at *4 (N.D. Ohio, May 3, 2021) (granting the government's motion in limine to exclude "any testimony by these officers on cross-examination by Defendant's counsel regarding additional statements made by Defendant that have not already been introduced on direct examination [because ruling otherwise would] effectively allow Defendant to testify without being under oath, without cross-examination, and without direct scrutiny by the jury."), *aff'd* 40 F.4th 749 (6th Cir. 2022); *United States v. McDaniel*, 398 F.3d 540, 545–46 (6th Cir. 2005) (affirming district court's decision not to permit defense to cross examinate witnesses "regarding additional statements made by [the defendant] that had not already been introduced on direct examination."); *United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005) (affirming refusal to allow cross on defendant's exculpatory statement because the statement was hearsay and not necessary as context); *United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007) (affirming district court's decision not to permit defense to elicit on cross examination the defendant's exculpatory statements because they were hearsay).

Additionally, the Defendant has listed his prior criminal attorney, Katie Blankenship, in this case as a defense witness. Any statements made to this defense witness would be hearsay, as this defense witness was not present for the assault on January 24, 2025. Therefore, any testimony from this witness would be inadmissible and would be irrelevant to whether the Defendant committed this offense. More importantly, this defense witness is still the counsel of record in the Defendant's immigration removal proceedings, so her testimony would require a waiver of

11

attorney client privilege.

Thus, the Court should prevent the Defendant from eliciting, through cross examination of prosecution witnesses and defense witnesses, the substance of *his* own statements. Such testimony is hearsay and not otherwise permissible.

VI.    <u>The Court Should Exclude Any Jury Nullification Arguments</u>.

The Court should also prevent the Defendant from arguing for, or advancing evidence aimed at, jury nullification. "[T]he jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury[.]" *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998). Furthermore, "defense counsel may not argue jury nullification during closing argument." *United States v. Hall*, 188 F. App'x 922, 925 (11th Cir. 2006), citing *United States v. Trujillo,* 714 F.2d 102, 106 (11th Cir.1983).

Consequently, the Defendant should be precluded from making any line of argument—or introducing any evidence—which include, but are not limited to:

a. contents of the Defendant's asylum application;

b. reference to the news on ICE detention facilities;

c. future immigration consequences; and

d. sentencing penalties.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court grant its motion *in limine*.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:     /s/ *Elizabeth Hannah*
Elizabeth Hannah
Assistant United States Attorney
Court ID No. A5503171
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9019
Elizabeth.Hannah@usdoj.gov

By:     /s/ *Melissa Roca Shaw*
Melissa Roca Shaw
Special Assistant United States Attorney
FL Bar No. 99628
99 Northeast 4th Street
Miami, Florida 33132
(305) 961-9340
melissa.shaw@usdoj.gov

## CERTIFICATE OF CONFERRAL

The United States certifies that it conferred telephonically with counsel for the Defendant on October 7, 2025. Counsel for the Defendant advised they oppose the first, third, and fourth motions in limine, and they do not oppose the second, fifth, and sixth motions in limine.

/s/ *Elizabeth Hannah*
Elizabeth Hanah
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Elizabeth Hannah*
Elizabeth Hanah
Assistant United States Attorney